## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSIOURI

| | |
|---|---|
| **JANE DOE,** | **CAUSE NO:** |
| *Plaintiff,* | |
| **v.** | **JURY TRIAL DEMANDED** |
| **OFFICER CHRISTOPHER E. KOESTER, COLONEL KENNETH L. GREGORY, OFFICER MARK D. EBERWEIN, OFFICER BRIAN GAILIS, OFFICER DEBORAH K. HUMPHREY, SERGEANT GARY L. ROBERTSON, OFFICER JEFFREY R. EMGE, OFFICER JACOB B. BROCK, OFFICER NICOLE GENTRY, LISA FLAMION, OFFICER MATHEW DEES, LIEUTENANT JEREMY F. ROMO, LITTLE HILLS HEALTHCARE, LLC _d/b/a_ CENTERPOINTE HOSPITAL, ST. LOUIS COUNTY POLICE DEPARTMENT, ST. LOUIS COUNTY, DR. SAM PAGE, M.D., DR. SHAZIA MALIK, M.D., SSM HEALTH CARE ST. LOUIS, DR. AZFAR MALIK, M.D., DR. BARRY KLEVENE, M.D., DR. DAVID SPROWLS, M.D., JOHN DOE 1, JOHN DOE 2, and JOHN DOE 3,** | |
| *Defendants.* | |

## PLAINTIFF'S ORIGINAL COMPLAINT

JANE DOE, Plaintiff in the above numbered and styled cause, brings this PLATINIFF'S

ORIGINAL COMPLAINT and would show the court the following:

## I.
## INTRODUCTORY STATEMENT

1.     The events made basis to this lawsuit sound like the plot of a movie or paperback novel; they surround anonymous text messages, anonymous letters, and anonymous phone calls received by the St. Louis County Police Department.  In 2014, JANE DOE filed a complaint against the St. Louis County Police Department officers who had participated in the investigation of her father's suicide because the officers had taken her father's possessions and never returned them.  Beginning in 2016, JANE DOE suddenly became the victim of numerous attempted and successful break-ins, was stalked, assaults, and rapes at the hands of one (1) man.  St. Louis County Police Department failed to investigate or collect evidence in relation to these attacks, began harassing her, and began treating her as though she was the perpetrator and not the victim. Instead of protecting her, the St. Louis County Police Department escalated their harsh treatment of JANE DOE by accusing her of not reporting the sexual assaults, despite clear evidence of her reports made.

2.     The majority of these interactions are initiated and engaged by a single Crisis Intervention Team Officer for the St. Louis County Police Department, Christopher E. Koester. Officer Christopher E. Koester actually told JANE DOE's now ex-husband that she was not being raped, but that she just liked "rough sex".  Officer Christopher E. Koester then spear headed a campaign, based upon anonymous calls, tips, unsigned letters and text messages for six (6) years that JANE DOE has experienced mental crises, but when JANE DOE is confronted, she has denied these claims, every single time.  Officer Christopher E. Koester has even admitted to JANE DOE that he has lied to a judge, and personally drove her to St. Charles County to have her committed at Little Hills Healthcare, LLC *d/b/a* CenterPointe Hospital for many involuntary 96-hour holds.  Officer Christopher E. Koester was and continues to be an investigating officer of these frequent attacks on JANE DOE.

3.     Over the course of six (6) years, St. Louis County Police Department still have never been able to identify a suspect in the stalking, attempted and successful break-ins, assaults and rapes that JANE DOE has reported.  Numerous officers have been dispatched to her home over four hundred (400) times throughout this timeframe.  The only investigation by St. Louis County Police Department and Officer Christopher E. Koester has been to harass and incarcerate JANE DOE with the use of involuntary 96-hour holds.

4.     JANE DOE was attacked, she was sexually assaulted and then had her sanity questioned and STLCPD then Swatted her for over five (5) years because she was sexually assaulted.  The prospect of this should be utterly chilling that this occurred in the United States of America, State of Missouri, Saint Louis County.

5.     This action is brought against St. Louis County Police Department, St. Louis County, Officer Christopher E. Koester, Colonel Kenneth L. Gregory, Officer Mark D. Eberwein, Officer Brian Gailis, Officer Deborah K. Humphrey, Sergeant Gary L. Robertson, Officer Nicole Gentry, Officer Dees, Officer Jeffrey R. Emge, Officer Jacob B. Brock, and Lieutenant Jeremy F. Romo, in their official and individual capacities, for a violation of Plaintiff's rights and privileges guaranteed under the Constitution of the United States of America as incorporated against the States and state actors under the Fourteenth Amendment to the United States Constitution.

6.     This action is brought against St. Louis County Police Department, St. Louis County, Officer Christopher E. Koester, Colonel Kenneth L. Gregory, Officer Mark D. Eberwein, Officer Brian Gailis, Officer Deborah K. Humphrey, Sergeant Gary L. Robertson, Officer Nicole Gentry, Lisa Flamion, Officer Jeffrey R. Emge, Officer Jacob B. Brock, and Lieutenant Jeremy F. Romo, in their official and individual capacities, for a violation of Plaintiff's rights and privileges

guaranteed under the Constitution of the United States of America as incorporated against the States and state actors under the Fourth Amendment to the United States Constitution.

7.    This action is brought against St. Louis County Police Department, St. Louis County, Officer Christopher E. Koester, Colonel Kenneth L. Gregory, Officer Mark D. Eberwein, Officer Brian Gailis, Officer Deborah K. Humphrey, Sergeant Gary L. Robertson, Officer Nicole Gentry, Lisa Flamion, Officer Jeffrey R. Emge, Officer Jacob B. Brock, and Lieutenant Jeremy F. Romo, in their official and individual capacities, for violation of the rights and privileges guaranteed under Article 1, Section 15 to the Constitution of the State of Missouri.

8.    This action is brought against Little Hills Healthcare, LLC *d/b/a* CenterPointe Hospital, Dr. Shazia Malik, M.D., and Dr. Azfar Malik, M.D., for false imprisonment of Plaintiff restraining her person (false imprisonment) without the legal or medical basis to do so and without the effective consent of JANE DOE and did so knowing the wrongness of their conduct.

9.    This action is brought against John Doe 1 for assault and rape of JANE DOE because he has physically assaulted and then sexually assaulted her over twelve (12) times between the years 2016 through 2022.

10.   This action is brought against St. Louis County Police Department, St. Louis County, Officer Jacob B. Brock, John Doe 2, John Doe 3, Dr. Barry Klevene, M.D., Dr. David Sprowls, M.D., and specifically SSM Health Care St. Louis, for false imprisonment of JANE DOE restraining her person (false imprisonment) without the legal or medical basis to do so and without the effective consent of JANE DOE and did so knowing the wrongfulness of their conduct.

## II.
## PARTIES & SERVICE OF CITATION

11.    Plaintiff, JANE DOE, is a natural person, a victim of violent crimes and sexual assaults, which is why she is referred to as JANE DOE throughout this complaint, and is resident of the State of Missouri.  Plaintiff brings this suit in her individual capacity.

12.    Defendant, OFFICER CHRISTOPHER E. KOESTER (hereinafter referred to as "Defendant Koester"), is a natural person and resident of the State of Missouri.  Plaintiff brings this suit in her individual and official capacity.  Defendant Koester may be served with process at 7900 Forsyth Blvd., Clayton, Missouri 63105.

13.    Defendant, COLONEL KENNETH L. GREGORY (hereinafter referred to as "Defendant Gregory"), is a natural person and resident of the State of Missouri.  Plaintiff brings this suit in her individual and official capacity.  Defendant Gregory may be served with process at 7900 Forsyth Blvd., Clayton, Missouri 63105.

14.    Defendant, OFFICER MARK D. EBERWEIN (hereinafter referred to as "Defendant Eberwein"), is a natural person and resident of the State of Missouri.  Plaintiff brings this suit in her individual and official capacity.  Defendant Eberwein may be served with process at 7900 Forsyth Blvd., Clayton, Missouri 63105.

15.    Defendant, OFFICER BRIAN GAILIS (hereinafter referred to as "Defendant Gailis"), is a natural person and resident of the State of Missouri.  Plaintiff brings this suit in her individual and official capacity.  Defendant Gailis may be served with process at 241 Crescent Ave., Valley Park, Missouri 63088.

16.    Defendant, OFFICER DEBORAH K. HUMPHREY (hereinafter referred to as "Defendant Humphrey"), is a natural person and resident of the State of Missouri. Plaintiff brings this suit in her individual and official capacity. Defendant Humphrey may be served with process at 7900 Forsyth Blvd., Clayton, Missouri 63105.

17.     Defendant, SERGEANT GARY L. ROBERTSON (hereinafter referred to as "Defendant Robertson"), is a natural person and resident of the State of Missouri. Plaintiff brings this suit in her individual and official capacity. Defendant Robertson may be served with process at 7900 Forsyth Blvd., Clayton, Missouri 63105.

18.     Defendant, OFFICER JEFFREY R. EMGE (hereinafter referred to as "Defendant Emge"), is a natural person and resident of the State of Missouri. Plaintiff brings this suit in her individual and official capacity. Defendant Emge may be served with process at 7900 Forsyth Blvd., Clayton, Missouri 63105.

19.     Defendant, OFFICER JACOB B. BROCK (hereinafter referred to as "Defendant Brock"), is a natural person and resident of the State of Missouri. Plaintiff brings this suit in her individual and official capacity. Defendant Brock may be served with process at 7900 Forsyth Blvd., Clayton, Missouri 63105.

20.     Defendant, OFFICER NICOLE GENTRY (hereinafter referred to as "Defendant Gentry"), is a natural person and resident of the State of Missouri. Plaintiff brings this suit in her individual and official capacity. Defendant Gentry may be served with process at 7900 Forsyth Blvd., Clayton, Missouri 63105.

21.     Defendant, LISA FLAMION (hereinafter referred to as "Defendant Flamion"), is a natural person and resident of the State of Missouri. Plaintiff brings this suit in her individual and official capacity. Defendant Flamion may be served with process at 400 1st Street, Hillsboro, Missouri 63050.

22.     Defendant, OFFICER MATHEW DEES (hereinafter referred to as "Defendant Dees"), is a natural person and resident of the State of Missouri. Plaintiff brings this suit in her individual

and official capacity. Defendant Dees may be served with process at 7900 Forsyth Blvd., Clayton, Missouri 63105.

23.     Defendant, LIEUTENANT JEREMY F. ROMO (hereinafter referred to as "Defendant Romo"), is a natural person and resident of the State of Missouri.  Plaintiff brings this suit in her individual and official capacity.  Defendant Romo may be served with process at 7900 Forsyth Blvd., Clayton, Missouri 63105.

24.     Defendant, DR. SHAZIA MALIK, M.D. (hereinafter referred to as "Defendant Dr. Shazia Malik"), is a natural person and resident of the State of Missouri. Plaintiff brings this suit in her individual and official capacity.  Defendant Dr. Shazia Malik may be served with process at 4801 Weldon Spring Parkway, Saint Charles, Missouri 63304.

25.     Defendant, DR. AZFAR MALIK, M.D. (hereinafter referred to as "Defendant Dr. Azfar Malik"), is a natural person and resident of the State of Missouri.  Plaintiff brings this suit in her individual and official capacity.  Defendant Dr. Azfar Malik may be served with process at 4801 Weldon Spring Parkway, Saint Charles, Missouri 63304.

26.     Defendant, LITTLE HILLS HEALTHCARE, LLC *d/b/a* CENTERPOINTE HOSPITAL (hereinafter referred to as "Defendant CenterPointe"), is a legal entity and a limited liability company organized under the laws of the State of Missouri.  It may be served with process by serving National Registered Agents, Inc. at 120 South Central Avenue, Clayton, Missouri 63105.

27.     Defendant, SSM HEALTH CARE (hereinafter referred to as "Defendant SSM Health"), is a legal entity and a limited liability company organized under the laws of the State of Missouri.  It may be served at CT Corporation System, at 120 S. Central Ave., Clayton, Missouri 63105.

28.   Defendant, DR. BARRY KLEVENE, M.D. (hereinafter referred to as "Defendant Dr. Klevene"), is a natural person and resident of the State of Missouri.  Plaintiff brings this suit in her individual and official capacity.  Defendant Dr. Klevene may be served with process at 10010 Kennerly Rd., St. Louis, MO 63128.

29.   Defendant, DR. DAVID SPROWLS, M.D. (hereinafter referred to as "Defendant Dr. Sprowls"), is a natural person and resident of the State of Missouri. Plaintiff brings this suit in her individual and official capacity.  Defendant Dr. Sprowls may be served with process at 10010 Kennerly Rd., St. Louis, MO 63128.

30.   Defendant, DR. SAM PAGE, M.D. (hereinafter referred to as "Defendant Page"), is a natural person and resident of the State of Missouri. Plaintiff brings this suit in her individual and official capacity. Defendant Page may be served with process at 41 South Central Avenue, Clayton, Missouri 63105.

## III.

## JURISDICTION & VENUE

31.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question), 1332(diversity), 1343, 1367(supplemental).

32.   Venue is proper in the Eastern District of Missouri because the allegations of events herein arise from acts and/or omissions occurring in this judicial district, 28 U.S.C. § 1391(b)(2), each of the named Defendants reside or resides in this judicial district, 28 U.S.C. § 1391(b)(1), and subject there to, because this Court, otherwise, has jurisdiction over at least one defendant in this lawsuit, 28 U.S.C. § 1391(b)(3).

## IV.
## EXHIBITS

33.    The following are exhibits attached to this pleading to support Plaintiff's claims asserted herein, for all purposes:

     a.    EXHIBIT A—Text message received by JANE DOE on January 21, 2022.

     b.    EXHIBIT B – Screen shot allegedly received by Defendant Chris Koester on his cell phone claiming Jane Doe was seeking his help.

     c.    EXHIBIT C—List of videos accessible on Ring.com.

     d.    EXHIBIT D—Listing of dispatch requests to JANE DOE's home.

     e.    EXHIBIT E—2017 96-hour hold including unsigned letters sent to the 7th precinct, and the hand written envelope addresses that had no fingerprints on them.

     f.    EXHIBIT F—September 2020 96-hour hold, including affidavit of Defendant Koester.

     g.    EXHIBIT G—December 2020 96-hour hold, including affidavit witnessed by Defendant Koester.

## V.
## FACTUAL BACKGROUND

34.    **First**.  In 2010, JANE DOE's father was diagnosed with cancer and ultimately took his own life in 2014 by a drug overdose of a known cancer medication when the cancer progressed. During their investigation of his death, STLCPD confiscated JANE DOE's father's shotgun, suicide letters and Vietnam era military blanket.

35.    In October 2014, JANE DOE filed a complaint with STLCPD regarding the conduct of the STLCPD's investigating officers concerning the shotgun and blanket that were taken into evidence, and her efforts to retrieve them since her father's death was ruled a suicide.

36.   Beginning in May 2016 and continuing through August 2016, JANE DOE began noticing a blue truck and its same driver began to follow her daily as she would jog through her neighborhood in XXXXXXX, Missouri.

37.   By October 2016, this stalking had escalated to repeated attempts of someone trying to break into her home at XXXXXXXXX, XXXXXXX, MO XXXXX ("Her Home").

38.   Ultimately, on October 18, 2016, an intruder successfully broke into Her Home, assaulted and raped JANE DOE.

39.   Because these attacks continued repeatedly, JANE DOE's grandmother began leaving coco powder on the steps of the backdoor of Her Home in order to detect if unknown persons had approached the door.  On October 28, 2016 and November 5, 2016, unknown footprints were seen.

40.   On November 12, 2016, JANE DOE was able to stab her attacker in the thigh with a knife in order to prevent an additional rape from occurring.

41.   These break-ins, assaults, and rapes continued to happen multiple times over the course of 2016.  It was later determined that JANE DOE's locked sliding glass door could be opened from the outside if a perpetrator applied the proper force to open it, and that was how her attacker kept entering Her Home.

42.   On November 14, 2016, STLCPD was called again because JANE DOE was assaulted and sexually assaulted by a person with the same build and physical properties as her previous attacker.

43.   Then again, on November 31, 2016, STLCPD was called again as she was again assaulted and raped by the same unknown subject from the other attacks.

44.   However, STLCPD did not respond as a reasonably prudent law enforcement agency would.  Specifically, in response to the attempted and successful break-ins, assaults, and rapes, STLCPD failed to:

    a.   Collect and analyze body fluid evidence from JANE DOE;

    b.   Collect and analyze the blood-stained knife used by JANE DOE to defend herself against her attacker;

    c.   Collect fingerprint evidence from the scene of the crimes;

    d.   Collect and analyze the cut zip tie that held the back gate to Her Home firmly closed on October 9, 2016;

    e.   Collect and analyze the footprint evidence on or about October 28, 2016 and November 5, 2016;

    f.   Collect, analyze and examine for fingerprints:  a razor blade, hammer, and beer can collected by JANE DOE's family and tendered to STLCPD in November 2016; and

    g.   Take the statement of a neighbor who witnessed a man running from Her Home at the time of JANE DOE's sexual assault.  Need Date.

    h.   Utilize a rape kit from any of the alleged rapes, except for the instance where JANE DOE fought off her attacker; and

    i.   Defendant Koester told her husband at the time that she made up all of the attacks, and liked "rough sex".

45.   **Second**.  Due to the failure of various officers and STLCPD to adequately investigate the assaults by taking pictures, conducting blood tests, analyzing the powdered footprints, or performing rape kits, said attacks on JANE DOE continued through November 2016 into the

following March, 2017.  The person that assaulted JANE DOE was and still has never been found, and due to Defendant Koester's constant involvement, the crimes against JANE DOE were and have never been properly investigated or solved.

### POLICE HARASSMENT OF JANE DOE

46.  **Third**.  Following STLCPD's investigative failures as to JANE DOE's attacks, officers began continuously showing up to Her Home without her request for their presence.

47.  The first incident took place at roughly 11:30 P.M. on **February 3, 2017**, when Defendant Koester, Defendant Humphrey and Defendant Romo showed up to Her Home stating that the 7th Precinct of STLCPD received multiple "anonymous" letters[1] indicating that JANE DOE was suicidal.  JANE DOE immediately denied the veracity of the allegations and ensured them that she never wrote said letters or requested their assistance.  Nonetheless, Defendant Koester applied for, signed and presented these unsigned, unidentified, which do not specify the personal knowledge or factual basis for the belief in self-harm, and conclusory in nature letters to a judge, within Saint Louis County, to request a 96-hour hold of JANE DOE.  Once granted, Defendant Koester, Defendant Humphrey and Defendant Romo then proceeded to take JANE DOE to Mercy Medical Center where she was evaluated by physicians and released prior to the expiration of the ninety-six (96) hours because no suicidal ideations or other psychosis was observed.

48.  Exhibit E was the only justification given for depriving JANE DOE of her freedom and liberty.

---

[1] These letters were nearly identical and were submitted as part of Defendant Koester's application for a 96-hour psychiatric hold for JANE DOE, which is attached as Exhibit E.

49.    In doing so, STLCPD, Defendant Koster, Defendant Humphrey and Defendant Romo falsely imprisoned JANE DOE and deprived her of her civil liberties guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

### HARASSMENT CONTINUES

50.    **Fourth.**   On or about **February 23, 2017**, two (2) unknown STLCPD officers came to Her Home for yet a fourth time, without being called by her, claiming that they received more **ANONYMOUS** calls alleging that she had a gun and "drugs" in her car while it was parked at XXXXXXX Elementary School.   JANE DOE again, immediately denied these false allegations made by anonymous persons and further offered these officers to inspect her car for drugs and a gun.   The officers declined and left.

51.    **Fifth.**   On or about **April 12, 2017**, eleven (11) plus STLCPD officers, including Defendant Eberwein, and officers from the Special Weapons and Tactics (SWAT) team, showed up to Her Home for yet a fifth time, dressed in bulletproof vests and strapped with automatic weapons.   Defendant Eberwein instructed JANE DOE to walk towards them, she was then placed in handcuffs, frisked, released upon not finding any weapons, and then explained to JANE DOE that they had received a call alleging JANE DOE was suicidal and standing outside with a gun stating she wanted to kill herself.

52.    JANE DOE adamantly denied any knowledge of the call, making the call, or any suicidal ideations and refused any on-scene medical attention.   JANE DOE's mother, who was at the residence with JANE DOE, was then contacted and denied that JANE DOE nor her had made that call, all of which she told the officers of STLCPD at that time.

53.    In response, Defendant Eberwein confiscated JANE DOE's phone without her consent and without a warrant.   Defendant Eberwein searched her phone, phone records, and call logs

stored in the phone.  The STLCPD officers then played the anonymous recording for JANE DOE's mother, wherein she denied that that it was JANE DOE's voice on the phone call or any knowledge of who it might be.

54.  Based on information and belief, STLCPD failed to investigate this incident of a false report made to the police.

55.  In doing so, STLCPD, including Defendant Eberwein, falsely imprisoned JANE DOE and deprived her of her civil liberties guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

56.  **Sixth.** On or about **April 23, 2017**, about four (4) unknown STLCPD officers, again arrived at Her Home, without JANE DOE calling them, claiming that they received a call from a muffled female voice stating that she was suicidal and wanted the police to find her.  JANE DOE, her mother, and her grandmother denied making the call and denied being suicidal or needing emergency assistance.  JANE DOE and her family demanded that the STLCPD officers trace the calls and investigate the persons making them instead of constantly harassing them.

57.  Based on information and belief, STLCPD Officers have failed to investigate this incident of a false report to police.

58.  In doing so, STLCPD has deprived JANE DOE of her civil liberties guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

59.  **Seventh**. On or about **June 23, 2017**, JANE DOE's now ex-husband filed for divorce, and told her that it was because of the police officer's statements, numerous 96-hour holds, and the words of Defendant Koester as the basis for him wanting to divorce JANE DOE.

60.  On or about **June 28, 2017**, about three (3) STLCPD officers, including Defendant Gentry, again returned to Her Home, entering into her backyard, without JANE DOE calling

them, and claimed that yet another two (2) hours prior, an anonymous suicide call was made into a hotline called "Life Crisis."  JANE DOE and her Mother again denied that either woman made the call and that they were at a doctor's appointment at the time.  The officers then took JANE DOE's phone from her without her consent, by force, and began searching the phone without a warrant.  One officer then changed his claim and then claimed that the call had been forty-five (45) minutes prior, not two (2) hours.  JANE DOE's mother then said she was with JANE DOE at that time too, and that again, neither her nor JANE DOE made the call.  The officer changed the time of the alleged call one more time to thirty (30) minutes prior.

61.   At this same interaction, the officer claimed that he received a suicide letter two (2) weeks prior to that instance.  However, as the interaction went on, this officer altered his statements again and said that it had happened one (1) month prior, not two (2) weeks.  Upon questioning why this officer waited one (1) month to investigate a month old suicide letter, officers left.

62.   Based on information and belief, STLCPD have failed to investigate this incident of a false report to police.

63.   In doing so, STLCPD, including Defendant Gentry, has deprived JANE DOE of her civil liberties guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

64.   **Eighth.**   On or about **July 26, 2017**, STLCPD officers, including Defendant Gentry, again returned to Her Home, without being called, claiming they were investigating another suicide attempt.  Defendant Gentry informed JANE DOE that they received a call from a woman named "Stephanie" from phone number "314-346-1538", a number known to be registered as a Verizon wireless phone.  This was the same phone number that the false reports had been made

from in the past.  JANE DOE denied being this "Stephanie", denied being suicidal, and denied making the call.

65.   Based on information and belief, STLCPD officers have failed to investigate this incident of a false report to police.

66.   In doing so, STLCPD, including Defendant Gentry, has deprived JANE DOE of her civil liberties guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

67.   **Ninth.** On or about **October 10, 2017**, an unknown female officer from STLCPD again came to Her Home without JANE DOE having called them and stated that Life Crisis, again, had called them and said that a woman was going to commit suicide.  JANE DOE denied making the call, again, denied knowing the number, and denied being suicidal.

68.   Based on information and belief, STLCPD officers have failed to investigate this incident of a false report to police.

69.   In doing so, STLCPD has deprived JANE DOE of her civil liberties guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

70.   **Tenth.** On or about **December 19, 2017**, STLCPD, including Defendant Gailis, returned to Her Home, again without JANE DOE calling them.  Defendant Gailis, as JANE DOE was leaving her home, began yelling at her, pointing an automatic rifle at her and ordered JANE DOE to:  put her hands in the air, walk down the driveway, and get on her knees.

71.   STLCPD now claimed that JANE DOE's mother had called using a different number and they were told that the caller said JANE DOE had a gun.  JANE DOE denied yet again the allegations stated by STLCPD.  When JANE DOE denied officers consent to search Her Home they left.

72.    Based on information and belief, STLCPD officers have failed to investigate this incident of a false report to police.

73.    In doing so, STLCPD, including Defendant Gailis, has deprived JANE DOE of her civil liberties guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

74.    **Eleventh and Twelfth.**   On or about **both February 16 and 18, 2018**, STLCPD, including Defendant Gailis, again arrived at Her Home without JANE DOE calling them for assistance and alleged that they received a call claiming she was having suicidal "ideations." JANE DOE again denied such ideations and denied making such calls.

75.    Based on information and belief, STLCPD officers have failed to investigate this incident of a false report to police.

76.    In doing so, STLCPD, including Defendant Gailis, has deprived JANE DOE of her civil liberties guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

77.    **Thirteenth.**   On or about **February 28, 2018**, after finishing her work for the evening, JANE DOE was approached with weapons drawn by STLCPD, including Defendant Eberwein and Defendant Dees.  The officers ordered JANE DOE to stop and proceeded to detain her.  The same officers searched JANE DOE's car, home and her person without her consent and, based on information and belief, without a warrant.  Officers called an ambulance to the location where she was observed by EMT and/or paramedics and/or fire fighters.  Still during JANE DOE's detention, EMT's observed JANE DOE EMT's determined that JANE DOE did NOT require hospitalization.  Still during the same detention, the same officers insisted to EMT's and/or paramedics that JANE DOE needed hospitalization and attempted to persuade the EMT's and/or paramedics to involuntarily hold her and/or involuntarily commit her.  JANE DOE was taken by the EMTs and/or paramedics to Mercy Hospital.  JANE DOE was released from detention by

Mercy Hospital soon after her arrival as there were no indications of mental illness, suicidal ideations or self-harm.

78.   Based on information and belief, STLCPD has failed to investigate this incident of a false report to police if this interaction was based on a report and not law enforcement acting independently of any legal basis to detain JANE DOE.

79.   In doing so, STLCPD, including Defendant Eberwein and Defendant Dees, falsely imprisoned JANE DOE and deprived her of her civil liberties guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

### RETRIEVING POLICE REPORTS

80.   On or about March 14, 2018, JANE DOE went to the STLCPD and demanded all police reports that existed concerning her since the year 2016.

81.   Many of the above police encounters were undocumented by officers of the STLCPD.

82.   Of the police reports, many of them contained discrepancies.

### HARASSMENT INCREASED FOLLOWING THIS INTERACTION

83.   **Fourteenth.**  On **March 14, 2018**, the exact same evening that JANE DOE sought copies of the police reports, STLCPD officers arrived with paramedics and/or EMTs at Her Home without JANE DOE calling them for assistance.  These officers ordered JANE DOE to stop and not to move. Officers proceeded to search her person without her consent. Officers now told JANE DOE that they received reports of the discharge of firearms in the area.

84.   Officers attempted to find a firearm in JANE DOE's possession, which she did not, because she did not own one at the time, and no firearms were found.

85.   Officers again instructed EMT's and/or paramedics to evaluate JANE DOE, while she was still being detained by the same officers, which they did without her consent.

86.   Officers attempted to pressure, again, these same EMTs and/or paramedics to take JANE DOE to the hospital, involuntarily.

87.   JANE DOE was released by officers and EMT persons because she was not hurt, not in danger, and not suicidal.

88.   **Fifteenth.** On or about **March 16, 2018**, STLCPD officers, including Defendant Eberwein, went to Her Home without JANE DOE calling them and alleged that they received some unknown suicide threat.  JANE DOE denied the allegation, denied making any calls, and denied being suicidal.  The officers detained JANE DOE without her consent and held her outside her home for a period of time before releasing her.  The same officers left Her Home.

89.   Based on information and belief, STLCPD has failed to investigate this incident of a false report to police.

90.   **Sixteen.** On or about **March 21, 2018**, STLCPD officers, including Defendant Eberwein, arrived at Her Home, without JANE DOE having called them, alleging that another call was received. Defendant Eberwein stated an ambulance was on the way because he claimed it was protocol on a suicide threat.

91.   **Seventeen.** On the same day, hours later, STLCPD officers returned to Her Home with two (2) patrol cars, without JANE DOE having called them, stating that another call was made and that it "sounded" like JANE DOE.  JANE DOE, who had been with her mother and grandmother at this same time, denied she made the call and denied that she was suicidal.  Both JANE DOE's mother and grandmother confirmed and/or stated the same thing to law enforcement.  When JANE DOE called her attorney, STLCPD left.

92.   Based on information and belief, STLCPD has failed to investigate this incident of a false report to police.

93. **Eighteen**. On or about **March 22, 2018**, STLCPD officers, including Defendant Eberwein, arrived at Her Home at 10:30 P.M. without JANE DOE having called them. Defendant Eberwein pounded on JANE DOE's door.  Defendant Eberwein said that another call came in, but failed to provide any additional details.  STLCPD woke the entire household. JANE DOE's mother denied making any calls and denied JANE DOE being in any danger.

94. Based on information and belief, STLCPD has failed to investigate this incident of a false report to police.

95. **Nineteen**. On or about **April 4, 2018**, STLCPD approached JANE DOE at her home as she was unloading her vehicle, after work, and alleged yet again that they received a call that JANE DOE overdosed and was passed out in her lawn.  JANE DOE denied making the call, denied overdosing, and denied needing medical assistance.  JANE DOE stopped talking to the officers because she was fed up with the harassment.  JANE DOE's mother then pretended to call JANE DOE's attorney, at which point the officers IMMEIDATLY left the scene.

96. Based on information and belief, STLCPD has failed to investigate this incident of a false report to police.

97. **Twentieth.**   On or about **April 24, 2018**, STLCPD approached JANE DOE at XXXXXXXXXXX Elementary School in XXXXXX, Missouri, where they alleged that they received yet another saying, generically, that someone in the area was trying to cut their wrists. JANE DOE denied, yet again, being suicidal denied and denied making the call.  JANE DOE after having been already subjected to nineteen (19) past incidents of harassment and violation of her constitutional rights, refused to let Defendant Humphrey inspect her writs.  Defendant Humphrey called for an ambulance and proceeded to physically restrain JANE DOE so that she could then force an inspection of her wrists.  After being detained by Defendant Humphrey,

JANE DOE was then subjected to an inspection by the ambulance personnel, who questioned her about her physical and mental wellbeing. JANE DOE's wrists were not cut, and JANE DOE was not taken in on an involuntary basis and released from detention by Defendant Humphrey.

98. Based on information and belief, STLCPD has failed to investigate this incident of a false report to police.

99. **Twenty-First.** On or about **May 1, 2018**, an unknown STLCPD officer arrived at JANE DOE's home without her having called them and claimed the existence of another alleged suicide threat. JANE DOE denied being suicidal and denied making any such call.

100. Based on information and belief, STLCPD has failed to investigate this incident of a false report to police.

101. **Twenty-Second.** On or about **May 3, 2018**, unknown STLCPD officers arrived as JANE DOE's home without her having called them and claimed that they received a call that someone was being threatened with a knife. JANE DOE's mother answered the door and denied the veracity of the allegation. The officers left.

102. Based on information and belief, STLCPD has failed to investigate this incident of a false report to police.

103. **Twenty-Third.** The same officers then returned at 11:00 P.M. with, carrying long rifles, and claiming that a call received that someone at Her Home was being threatened with a gun. JANE DOE's mother, again, answered the door and denied the veracity of the allegations. JANE DOE's mother demanded that STLCPD stop harassing her family. The officers stated they refused to acquiesce and stated they would keep coming back.

104. Based on information and belief, STLCPD has failed to investigate this incident of a false report to police.

105. **Twenty-fourth.**  The next day, on **May 4, 2018**, Defendant Humphrey approached JANE DOE while she and her boyfriend at the time, and current late husband, were out to dinner at the Lake Saint Louis County Club without having called for police assistance.   Defendant Humphrey, out of uniform, stated to JANE DOE that STLCPD was building a case against her for either gun or drug charges and that if they failed they would cause to have her involuntarily committed to a mental institution.  Defendant Humphrey further threatened that she would cause to have the Lake Saint Louis Police Department "pay" JANE DOE's late husband a visit.  *At this very same altercation*, Defendant Humphrey told JANE DOE's late husband that, it is not safe for his daughters to be in JANE DOE's presence.  Then Defendant Humphrey exited.  Defendant Humphrey's tone and demeanor was one of a threat to JANE DOE's person, her late husband's person, and her late husband's children.

106. **Twenty-Fifth.** On or about **May 8, 2018**, two (2) STLCPD officers, including Defendant Gentry, approached JANE DOE in public while in their patrol cars, and stated that someone had called in about her mental health status.

107. **Twenty-sixth**.   On or about **May 24, 2018**, unknown STLCPD Officers approached JANE DOE in public with their Tasers drawn, interrogated JANE DOE, but ultimately left.

108. **Twenty-seventh**.   On or about **June 20, 2018**, two (2) STLCPD officers, including Defendant Eberwein, went to Her Home without JANE DOE having called them and alleged receiving another call about suicide.  JANE DOE yet again, denied making the call and denied being suicidal.

109. Based on information and belief, STLCPD has failed to investigate this incident of a false report to police.

110. Instances such as this one occurred systematically from June 8, 2018, through May 2020.

### STLCPD DENIED JANE DOE'S MOTHER EMERGENCY AID

111. **Twenty-Eight.** On **May 10, 2020**, JANE DOE's mother's cancer had worsened. JANE DOE called 911 for an ambulance because her mother began having trouble breathing. Emergency medical personnel did not arrive and was held off. Instead, STLCPD Officer Rogers arrived and parked outside of Her Home. JANE DOE called 911 a second time when it did not arrive. Several minutes later, 911 called JANE DOE and said that STLCPD was outside and the 911 operator relayed the message that STLCPD wanted JANE DOE to come outside. JANE DOE exited to find STLCPD officers, who proceeded to ask JANE DOE if she called for an ambulance. JANE DOE desperately pleaded regarding her mother and her mother's inability to breathe and needing to get back to her. An unknown STLCPD officer uttered under his breath something semi-audible that included, "well fine you a big mouthpiece." JANE DOE wrote a letter complaining of this situation to the STLCPD Chief of Police. On May 18, 2020, JANE DOE's mother passed away after losing her fight with cancer.

### SECOND FALSE IMPRISONMENT & UNLAWFUL MENTAL COMMITMENT

112. **Twenty-Nine.** On or about **August 30, 2020**, three (3) STLCPD officers, including Defendant Eberwein, Defendant Koester and Defendant Emge, arrived at Her Home without JANE DOE having called them and alleged that they received a call from one (1) of JANE DOE's students, another anonymous caller/threat that alleged that JANE DOE was suicidal. JANE DOE again denied the allegation. JANE DOE denied thinking about or contemplating self-harm. When Defendant Emge asked if JANE DOE wanted to call the behavioral health unit of STLCPD, she stated no. Defendant Emge then told JANE DOE that if she only had two (2) options and only two (2) options, one (1), to call the behavioral health unit herself, or two (2) that they were going to take her to the hospital. JANE DOE agreed to call behavioral health unit,

but Defendant Emge stated that they were "beyond that" and took this option off the table. The officers further threatened that they would call EMS and have JANE DOE strapped to a gurney and taken to the hospital if she did not go to the hospital willingly. JANE DOE did not comply. Defendant Emge and Defendant Eberwein then placed JANE DOE in handcuffs, took her outside of Her Home, she was then handcuffed to the gurney and taken to the hospital without her consent. Upon arrival at the hospital, JANE DOE informed doctors that she was not suicidal and had no intention of self-harm and that she had been the subject of long-term police harassment. JANE DOE called her late husband who spoke to the counselor and JANE DOE was shortly released from Mercy Hospital.

### THIRD FALSE IMPRISONMENT & UNLAWFUL MENTAL COMMITMENT

113. **Thirty.** Then again on **August 31, 2020**, after having been released already, twice, Defendant Koester, Defendant Robertson, and Defendant Flamion showed up to Her Home with a court order (Exhibit G) that JANE DOE was to be placed on a 96-hour hold. JANE DOE explained to these persons exactly what happened the week prior and how she had been released by staff at Mercy Hospital. Defendant Robertson responded that this 96-hour hold was NOT for Mercy Hospital but for Defendant CenterPointe, and stated to JANE DOE, "You won't be getting out this time." Defendant Koester then arrested JANE DOE and removed her from Her Home. JANE DOE immediately retained counsel who petitioned for a Writ of Habeas Corpus. It was not until fifteen (15) days later that JANE DOE was freed from Defendant CenterPointe on September 14, 2020.

### CONTINUED HARASSMENT

114. **Thirty-One.** On or about **September 21, 2020**, at about 3:45 A.M., JANE DOE's doorbell rang at Her Home and when she opened the door, she saw a STLCPD patrol vehicle

driving away.  JANE DOE then called the police station and was told by the operator that they had received a suicide call and were making a check.  The next day JANE DOE called STLCPD again asking for the report concerning the call that caused police to come to Her Home. STLCPD phone operator could not provide JANE DOE with even a report, but said that it came from a suicide hotline and it was a female voice, without any additional information.

115.  **Thirty-Two.**  On or about **September 26, 2020**, STLCPD officers, including Defendant Dees, arrived at Her Home without JANE DOE having called, or texted them and alleged that they received another suicide threat.  JANE DOE again denied making the call, denied being suicidal, and denied the veracity of the allegation.  STLCPD officers, including Officer Dees then went to speak to JANE DOE's neighbors.  When Defendant Dees stepped out of ear shot, another officer plainly told JANE DOE that the officers were actively compelling new calls with the intent of sending JANE DOE back to Defendant CenterPointe.

### FOURTH FALSE IMPRISONMENT & UNLAWFUL MENTAL COMMITMENT

116.  **Thirty-Four.**  On or about **October 2, 2020**, at about 2:00 A.M., STLCPD officers, including Defendant Eberwein and Defendant Emge, arrived at Her Home and alleged that another call was received on a hotline.  JANE DOE denied making the call and denied being suicidal.  Defendant Eberwein accused her of lying.  Defendant Emge stepped away to make a phone call and then came back claiming that a person by the name of "Cameron" had given them sufficient information to have JANE DOE involuntarily hospitalized again.  Defendant Eberwein and Defendant Emge called an ambulance to Her Home again.  Defendant Emge and Defendant Eberwein then proceeded to search JANE DOE's home without consent.  Defendant Emge and Defendant Eberwein then seized JANE DOE's medication along with a toy pellet gun that belonged to JANE DOE's father.  When EMS arrived, JANE DOE immediately told them she

was not suicidal and did not want to go to a hospital.  Defendant Emge and Defendant Eberwein then immediately restrained JANE DOE with handcuffs and placed her under arrest, placed her in an ambulance and took her to Mercy Hospital.  When JANE DOE spoke to counselors at Mercy Hospital and told them she was not suicidal, she was then discharged.

117. **Thirty-Five** On or about the night of **October 11, 2020**, STLCPD officers showed up to Her Home and rang her doorbell at about 1:14 A.M., as according to her doorbell camera.  No corresponding CAD call can be found. See attached, Exhibit D.

118. **Thirty-Six.** On or about the night of **October 16, 2020**, three (3) additional STLCPD officers appeared at JANE DOE's home, around 1:02 A.M. and the same general scenario as discussed thoroughly in this petition occurred again.  JANE DOE did not call them and did not make an emergency request.  The officers left.

119. **Thirty-Seven**. On or about the morning of **October 17, 2020**, STLCPD officers, including Defendant Eberwein, knocked on JANE DOE's door at 1:12 A.M.  Defendant Eberwein makes a phone call, leaves, then returns about 1:23 A.M. and begins beating on JANE DOE's door saying he got a call from the behavioral health unit, wherein a claim was made as to be JANE DOE and asking for assistance.  JANE DOE denies making the call and denies needing assistance.  The STLCPD officers did not bring any paramedics or fire and rescue responders with them.

120. **Thirty-Eight.**  On or about **October 25, 2021**, three (3) STLCPD Officers show up to JANE DOE's Home at about 12:52 A.M. and knock hard on the door.  When JANE DOE denies calling, needing help, and needing to go to the hospital, they leave.

#### ANOTHER ARREST & ANOTHER UNLAWFUL CONFINEMENT

121.  On December 3, 2020, at around 12:03 A.M., the STLCPD officers, arrested JANE DOE at Her Home, based on an alleged commitment order that is believed to have been signed by Defendant Koester.  This order (it has been later to be determined) did not have the notarized signatures or affidavits required for a proper 96-hour hold; this Order is attached as Exhibit F, but was also signed, in an attempt as a notary by Defendant Koester.  The STLCPD officers entered JANE DOE's home without a search warrant, used excessive force because their actions strained her rotator cuff and tore her *glenoid labrum* (later diagnosed by a medical professional), hit JANE DOE three (3) times in the process of putting her into her car, and during the whole interaction, caused JANE DOE to strain her ankle.  JANE DOE was again transported to Defendant CenterPointe.  While at Defendant CenterPointe she was not given medical attention to her shoulder despite expressing significant pain. JANE DOE never received any medical treatment whatsoever.  Further, doctors at Defendant CenterPointe refused to give her normal regime of medications and told her should would get her prescribed medications only after she would agree to take the medications that Defendant CenterPointe wanted her to take which consisted of lithium and multiple other medications.

122.  On December 4, 2020, JANE DOE's counsel filed JANE DOE's petition (Cause No. 20SL-CC05941).  On December 8, 2020, JANE DOE was released.

123.  Based on information and belief, STLCPD, through Defendant Robertson and the crisis intervention unit, conspired with Defendant CenterPointe and Defendant Dr. Shazia Malik, to confine JANE DOE in Defendant CenterPointe for their own malicious purposes.  This seems to be evident in that:

        a.  JANE DOE was taken to Defendant CenterPointe in St. Charles, Missouri, even though JANE DOE lives in Saint Louis County, Missouri and there are numerous

hospitals, including a Defendant CenterPointe, that are closer to JANE DOE's home;

b.   When responding to the alleged phone calls, multiple different officers each told JANE DOE that they were trying to confine her to Defendant CenterPointe;

c.   JANE DOE was denied care for care for Mastocytosis;

d.   JANE DOE arrived at Defendant CenterPointe with a torn labrum in her shoulder for which neither STLCPD, nor Defendant CenterPointe provided any treatment for;

e.   The affidavit, which was notarized on December 2, 2020, and was used to achieve the ninety-six (96) hour hold against JANE DOE, specifically states that "With the increase in the suicidal threats since the last evaluation, [Defendant] Robertson, with the Crisis Intervention Unit, reached out to [Defendant] CenterPointe with the updated information and calls for service. As a result, [Defendant Dr.] Azfar Malik has requested JANE DOE be brought back to [Defendant] CenterPointe for further evaluation"; and

f.   Defendant Dr. Shazia Malik, while interviewing JANE DOE at Defendant CenterPointe on December 6, 2020, commented that JANE DOE was held at Defendant CenterPointe a second time because she had refused to "be quiet" after her first confinement.

124.   **Forty**.  On or about **December 12, 2020**, STLCPD Officers again appeared at Her Home at 11:20 P.M. without being called. Defendant Eberwein knocks on JANE DOE's door and again asks about JANE DOE, and for her to open the door. Defendant Eberwein claims he got another call. This continues again on December 14, 2020, 10:52 P.M., JANE DOE was in the process of

exiting her home when officers of STLCPD approached her and started to question her and then left.  Then on December 15, 2020, at about 11:49 P.M. STLCPD officers rang JANE DOE's doorbell, then began examining around her house.

125.  **Forty-One.**  On **December 21, 2020**, at 12:25 A.M. when STLCPD officers approached Her Home but did not ring the bell, and they were recorded on the Ring doorbell, which picked up some garbled statements by officers, but they left without knocking or ringing JANE DOE's doorbell.

126.  **Forty-Two.**  On **December 24, 2020**, STLCPD officers approached Her Home without her having summoned them to ask if she needed assistance with "Text Messages" and this time they specifically identified themselves as STLCPD.

### THIS YEAR, 2021

127.  The year 2021 did not stop STLCPD from coming to JANE DOE's home without her having summoned them because:   on **January 5, 2021**, at 11:26 P.M. STLCPD officers approached her door to Her Home saying they had a dispatch from a Crisis line, JANE DOE denied having a three (3) hour conversation as reported; on **January 12, 2021**, at about 12:12 A.M., STLCPD again approached JANE DOE's door to Her Home where they claimed another crisis line call, which she denied again, STLCPD officers said they got a text, and JANE DOE denied and stated she needed no assistance; on **January 17, 2021**, right as JANE DOE was arriving home from work she was approached Officers asking if she needed assistance and she said no; on **January 25, 2021**, where the Officers are now staying off the Ring doorbell camera, but JANE DOE again stated that she did not need assistance as was being asked; on **February 5, 2021**, STLCPD officers stopped JANE DOE from entering her home as she arrived home claiming that JANE DOE's grandmother contacted STLCPD, JANE DOE was ultimately

allowed into her home after the Grandmother denied making the alleged call; on **February 9, 2021**, STLCPD officers again approached JANE DOE right as she was leaving Her Home and begin questioning her, but JANE DOE kept moving and left while officers were still attempting to question her.

128. **Forty-Three.**   On **February 19, 2021**, STLCPD officers approached JANE DOE's Home and were recorded on the doorbell camera saying things like "they are watching you." STLCPD officers knocked and said they "got a call" about taking pills and alcohol.  JANE DOE, at this point, incoherently responds to the doorbell camera request because she is on medications from her surgery that day, and the officers simply thank her and leave.

129. **Forty-Four.**  On **February 26, 2021**, at about 12:58 A.M., STLCPD officers approached Her Home without being called and ring JANE DOE's door.  Officers claimed they got another call and asked if she is going to hurt herself.  JANE DOE does not respond.

130. **Forty-Five**.  On **February 28, 2021**, STLCPD officers again come to JANE DOE's home without her having called them.  STLCPD officers, before approaching her, watched her load and unload her vehicle for approximately ten (10) minutes.  When they approached they then asked her if she needed medical help.  JANE DOE denied needing medical help.

**DECEMBER 2021 FALSE IMPRISONMENT**

131. **Forty-Six**. On October 29, 2021, JANE DOE was sexually assaulted by John Doe 1 while walking in a park near her home.

132. Because of the substantial and ongoing harassment from STLCPD, JANE DOE was reluctant to go to the hospital; however, on November 1, 2021, JANE DOE went to St. Joseph's in St. Charles County to treat the injuries she sustained from the attack.

133. She went to a hospital in St. Charles County in an attempt to avoid additional harassment at the hands of STLCPD.

134. Despite her efforts, Defendant Brock came to the hospital. While at the hospital, Defendant Brock entered her room several times, during the "rape kit" collection process, to the point that the nurse finally locked the door on Defendant Brock.

135. Defendant Brock collected the "rape kit" from the hospital, but talked to the treating physician, Defendant Dr. Klevene and persuaded Defendant Dr. Klevene that this was not a legitimate assault, and as a consequence, Defendant Dr. Klevene refused to give her medication.

136. A few days after the assault Sergeant Wall with the crimes against person's division with STLCPD took over the investigation of the case.

137. On November 12, 2021 JANE DOE again was sexually assaulted by John Doe 1, this time in her home. The assailant entered through her basement sliding door. Like in 2016, he was able to rock the door and was able to knock down the Charley Bar. He entered her home and sexually assaulted JANE DOE. During the assault, an audio recorder was enabled, and you can hear John Doe 1's voice during the recording.

138. JANE DOE was taken to the hospital and a full treatment and report was made.

139. No STLCPD officers came to the hospital that night.

140. On December 4, 2021, JANE DOE was again sexually assaulted by John Doe 1.

141. She went to DePaul Hospital again, notified security that no one, except Sergeant Wall, was to be allowed to be present with JANE DOE from STLCPD.

142. Defendant Brock, along with at least two (2) other STLCPD officers, John Doe 2 and John Doe 3, came to Defendant SSM Health. JANE DOE instructed the staff that Defendant Brock was not allowed into her hospital room. Defendant Brock then entered her room anyway

and spoke to Defendant Dr. Klevene and upon information and belief told Defendant Dr. Klevene that JANE DOE was suicidal, had past self-harm and has exhibited drug-seeking behavior. It should be noted that there is nothing in her medical charts or other history to substantiate these allegations by Defendant Brock.

143. Defendant Dr. Klevene then administered Ketamine to JANE DOE, which is not commonly done.

144. Defendant Brock then left and another unknown STLCPD officer came to the hospital to collect the "rape kit".

145. Soon thereafter, JANE DOE was told that her injuries were not severe enough, that Defendant Brock had told Defendant Dr. Klevene that she had a past history of self-harm and that she was exhibiting drug seeking behavior, and because her injuries were not as severe as they should have been, the doctor was placing her under a 96-hour mental hold.

146. JANE DOE was transferred to St. Mary's, the next day, and after meeting with a psychiatrist, she was immediately released, because the psychiatrist found no grounds to hold her, that she was not engaging in self-harm and was not suicidal.

147. Throughout this entire process Defendant Koester and STLCPD have maintained that JANE DOE's assaults did not happen, used her sexual assaults to harass her and ultimately have her committed to mental institutions, only to then have the sexual assaults continue unfettered because she came to the realization that there is no one to turn to when the people that are supposed to protect you are the people that are harming you.

148. There are several problems with Defendant Koester and STLCPD's investigations with JANE DOE's case, specifically:

a.  This has been going on for six (6) years and there has been no investigation of JANE DOE's stalker, assaults and sexual assaults from 2016 and then in 2021 and 2022;

b.  The crisis line, which Defendant Koester directly controls, is the sole receiver of the alleged anonymous text messages that JANE DOE consistently refutes as her calling;

c.  It is irrational that any law enforcement agency could not be able to obtain who was actually sending the anonymous text messages, phone calls or otherwise; and

d.  It is further irrational that Defendant Koester and STLCPD, despite a rebuttal from JANE DOE that she is not making these calls, would continue, over the span of six (6) years, to continue to show up, yell at, and otherwise fail to follow all suicidal protocols in place by STLCPD, and not ascertain the true identity of the original reporter.

149.    The anonymous caller, is wasting police resources, and under Missouri law, that person is committing a felony. If the caller was JANE DOE, even though JANE DOE vehemently denies making any calls, sending any texts or otherwise, STLCPD and Defendant Koester could have easily obtained the evidence they need to properly charge her with a legitimate crime of abuse of police resources, but just like the sexual assaults, they have failed to investigate any of these crimes.

150.    From October 29, 2021 through January 23, 2022, JANE DOE has been assaulted once, and sexually assaulted on eight (8) different dates.

151.    Because of her fear of being committed by Defendant Brock and STLCPD Officers who interfered with a criminal investigation on December 4, 2021, JANE DOE

has not made any additional reports of these five (5) other sexual assaults committed by John Doe 1.

152.    **Forty-Seven**. John Doe 1, during these sexual assaults has repeatedly used a knife to cut JANE DOE, however, on January 23, 2022; John Doe 1 threatened JANE DOE with a pistol.

153.    **Forty-Eight**. On February 26, 2022, John Doe 1 sexually assaulted JANE DOE, and due to the prior interactions with STLCPD, JANE DOE was afraid to report this sexual assault.

154.    **Forty-Nine**. On March 11, 2022, John Doe 1 sexually assaulted JANE DOE, and due to the prior interactions with STLCPD, JANE DOE was afraid to report this sexual assault.

155.    **Fifty**. On March 12, 2022, John Doe 1 sexually assaulted JANE DOE, and due to the prior interactions with STLCPD, JANE DOE was afraid to report this sexual assault.

156.    **Fifty-One**. On March 13, 2022, John Doe 1 sent JANE DOE a text messaging telling her, "You should kill yourself and get it over with i am not going to stop nobody can stop me this is your fault if you did not want it if you did not enjoy it you would not let it continue kill yourself or it will only get worse for you", which came from a phone number of (636) 389-2350

157.    **Fifty-Two**. JANE DOE has received other text messages from multiple numbers, including (636) 399-8763, (314) 857-6064, (636) 215-0102, (314) 287-3570, (636) 400-3405, (636) 202-7417, (636) 243-8776, (618) 221-1549, (313) 308-2630, (636) 389-2350, and (636) 399-4386.

158.     In a hearing for a temporary injunction against JANE DOE in January of 2021, Defendant Koester testified that he had received a text message from JANE DOE asking for his help at the hearing. This text is included as Exhibit B to this Petition for Damages. At the hearing Defendant Koester entered this text message into evidence, but redacted the number of the sender. The judge ordered that number be disclosed, and it was the (636) 399-4386 number that has harassed JANE DOE in the past. Further, this phone number texted the New York Crisis Text Line, which resulted in STLCPD Officers going to JANE DOE's home.

### HARASSMENT WAS CONTINUOUS

159.     **Fifty-Three.**   During this timeframe, police Officers frequently responded to JANE DOE's home without her request. These dispatch requests were based upon calls placed directly to 911, calls made to various mental crisis lines, and during the timeframe of January 2021 through January 2022, the majority of these calls originated from the New York based crisis text line, however there were a handful of calls directly made to 911.

160.     The majority of the calls originated from two numbers, (636) 751-0388 and (636) 399-8763. Both of these numbers texted, made live calls, and were pinged by Saint Louis County Dispatch, but they were not pinged, from the 911 call records, to JANE DOE's home, but were nearby.

161.     The calls and texts made by JANE DOE's phone would be alarming when taken in a vacuum, however, considering this activity has gone on since January of 2016, it is alarming that some sort of investigation was not done to try and find out who owned these numbers.

162.     The (636) 399-8763 number has also texted JANE DOE after her sexual assaults and has admitted to sexually assaulting JANE DOE in these text messages.

163.     Further, one of these calls was made from the phone number of (636) 399-4386, which is the same phone number that texted Defendant Koester in 2021 prior to the injunction, and St. Louis County redacted, and fought to ensure that this number was anonymous.

164.     Swatting is a term used to define when someone makes a false police report against a third person, and police swarm their home. JANE DOE has essentially been routinely Swatted by STLCPD, but they have not investigated anything.

165.     The fundamental question here is why has St. Louis County allowed this to continue? For five (5) years, this has continued. A serial rapist, John Doe 1, remains at large, and a woman keeps getting Swatted by STLCPD Officers and there have been no arrests, no suspects and no charges filed.

166.     JANE DOE received a text message from the (636) 399-8763 number following a sexual assault in 2021. This phone number reported a large number of the attempted suicides to the crisis text lines and made several phone calls to 911. This message said;

> "You are going to die the only question is how how (*sic*) badly do you want it to hurt when it happens you should think about that and decide before it gets decided for you"

167.     STLCPD investigates the claims from random text messages, but John Doe 1 remains unidentified and continues to sexually assault JANE DOE.  JANE DOE has been effectively Swatted for over five (5) years through anonymous letters, text messages and phone calls, but no one has been identified as a perpetrator in any way in this case.

# VI.
## CAUSES OF ACTION

168.     Plaintiff incorporates by reference all above paragraphs and realleges as if set out herein for each of the counts set out below.

169.     Plaintiff's reference to each individual amendment and sub part to the bill of rights (amendments one through eight of the United States Constitution) is a reference to the amendment as it has been incorporated through the Fourteenth Amendment to the United States Constitution. *See St Louis Cotton Compress Co. v. Arkansas*, 260 U.S. 346 (1922); *Cassady v. Tackett*, 938 F.2d 693 (6th Cir. 1991) (*per curiam*).[2]

**COUNT I – FALSE IMPRISONMENT IN VIOLATION OF THE 4TH AMENDMENT (42 U.S.C. § 1983)**

170.     At all relevant times in the County of Saint Louis, State of Missouri, STLCPD, Defendant ST. LOUIS COUNTY, and law enforcement officers Defendant Koester, Defendant Eberwein, Defendant Romo, Defendant Humphrey, Defendant Robertson, Defendant Dees Defendant Emge, Defendant Gailis, Defendant Brock, Defendant Flamion, and Defendant Gentry deprived Plaintiff of her rights to be free from (i) warrantless/unlawful/unreasonable searches & seizures, (ii) free from unlawful detentions, and (iii) free from unlawful bodily assaults against her person guaranteed to her under the Fourth Amendment to the United States Constitution as incorporated under the Fourteenth Amendment when he/she/they falsely, unlawfully, without probable cause, and wrongfully with force and without Plaintiff's consent and against her will did, by unlawfully arresting her, detaining, her, and then having her held/detained/involuntarily committed as follows:

---

[2] *See, e.g. Pickering v. Board of Educ.*, 391 U.S. 563 (1968); *Cantwell v. Connecticut*, 310 U.S. 296 (1940); *Wolf v. Colorado*, 338 U.S. 25 (1949); *Benton v. Maryland*, 395 U.S. 89 (1969); *Jackson v. Galan*, 868 F.2d 165 (5th Cir. 1989); *Gideon v. Wainright*, 372 U.S. 335 (1962); *Robinson v. California*, 370 U.S. 82 (1962).

a. The February 2017 detention of her person by STLCPD (by and through Defendant Koester, Defendant Romo, and Defendant Humphrey) and her then immediate transport by ambulance to Mercy Hospital and then her immediate continued detention by Mercy Hospital at the behest of the STLCPD via a 96-hour hold process, which resulted in her detention for approximately **24-hours** at Mercy Hospital;

b. The April 2017 confiscation and taking and then subsequent warrantless search of Plaintiff's cell phone by Defendant Eberwein;

c. The February 2018 detention of her person by STLCPD and her subsequent transport by ambulance to Mercy Hospital and then her immediate continued detention by Mercy Hospital at the behest of the STLCPD, which resulted in her detention for approximately **several hours**;

d. The March 2018 search of Plaintiff's person by STLCPD and then subsequent forced, under detention and evaluation by paramedics;

e. The approximate August 31, 2020 arrest and detention of her person by STLCPD (by and through Defendant Koester) and her immediate transport (by Defendant Koester's personal police vehicle and not an ambulance) to Defendant CenterPointe in St. Charles County, and then her immediate continued detention by Defendant CenterPointe at the behest of STLCPD via a 96-hour hold process, which resulted in her detention for approximately **12 days**;

f. The August 2020 (near immediately after her detention began) search of Plaintiff's home by STLCPD (by and through Defendant Koester, Defendant

Robertson, and Defendant Flamion) without a warrant and illegal seizure of her personal belongings, which resulted in the following items turning up missing:

    i. Plaintiff's Calendar;

    ii. Plaintiff's notebook logging, in detail, all the events she has been subjected to by the STLCPD and its officers;

    iii. Plaintiff's written correspondence to her mother.

g. The approximate October 2020 arrest and detention of her person by STLCPD (by and through Defendant Eberwein and Defendant Dees) and then subsequent transport to Mercy Hospital at the behest of the STLCPD via a 96-hour hold process, which resulted in her detention for approximately **half of a day**;

h. The approximate December 4, 2020, arrest and detention of her person by STLCPD[3] (by and through Defendant Koester, Defendant Dees, and Defendant Robertson), her immediate transport to Defendant CenterPointe in St. Charles County, and then her immediate continued detention by Defendant CenterPointe at the behest of STLCPD via a 96-hour hold process, which resulted in her detention for approximately **3 days**;

i. The December 4, 2020, search of Plaintiff's home without a warrant while Plaintiff was handcuffed and detained by STLCPD (by and through Defendant Dees, and three (3) other STLCPD officers); and

j. The December 4, 2021, arrest and detention of her person by STLCPD (by and through Defendant Brock and possibly at least two (2) other STLCPD officers or more), and her immediate detention into the psychiatric division of St. Joseph's

---

[3] In the process of this illegal detention, STLCPD also assaulted Plaintiff by throwing Plaintiff to the ground from stairs, which resulted in torn labrum in her shoulder.

Hospital in St. Louis County, to St. Mary's hospital via a 96-hour hold, which resulted in her detention for only a few hours before being released without her consent and against her will and without cause, which is discussed in more detail in the facts section above.

171.     These actions by these same identified defendants had to be known by Detective Cook, who Plaintiff complained to that this conduct was happening. Detective Cook then knowingly permitted his officers (those identified above) to engage in this systematic course of continued conduct and/or abuse against Plaintiff in depravation of her rights.

172.     The actions by these same identified defendant law enforcement officers were under color of law because at the time of the events outlined above, these defendants were in uniform of STLCPD, took Plaintiff away in STLCPD vehicles, may or may not have occurred while the respective defendants were on duty, occurred pursuant to what would be tasks associated with their capacity as police/peace officers (rather than those of private citizens), and was done under the claim (as stated by each respective Defendant) that they were responding to 911 calls or calls into the police station as a call of an emergency nature.

173.     As the direct proximate result of the violations of the Plaintiff's constitutional rights, by these same identified STLCPD officers, Plaintiff suffered general and special damages as plead in this Complaint and are for these reasons entitled to relief under 42 U.S.C. § 1983.

174.     As discussed above, at the time that Defendant Koester, Defendant Humphrey, Defendant Romo, Defendant Robertson, Defendant Emge, Defendant Flamion, Defendant Eberwein, Defendant Gailis, Defendant Brock, and Defendant Gentry (1)

arrested Plaintiff without a warrant, (2) searched her home without a warrant, (3) took from Plaintiff her cell phone and searched it without a warrant, (4) removed Plaintiff's person from her home and to a mental hospital without Plaintiff's consent or other legal right to do so, and/or (5) caused a mental health facility to take control of Plaintiff's person without the lawful right to do so, and without cause, they violated Plaintiff's clearly established rights at that time, and the same defendants violated the same said rights in such a manner that a reasonable official would have understood that he or she was violating the same said right.

### COUNT II – FALSE IMPRISONMENT UNDER COMMON LAW (INTENTIONAL)

175.    Plaintiff incorporates by reference all above paragraphs and repleads them herein.

176.    Defendant Dr. Shazia Malik and Defendant Dr. Azfar Malik, individually, and Defendant CenterPointe (by and through Defendant Dr. Shazia Malik and Defendant Dr. Azfar Malik), (hereinafter collectively referred to as "CenterPointe Hospital Defendants") without consent and without legal right or authority to do so, intentionally restrained and intentionally caused to be restrained Plaintiff's person with the intent to cause Plaintiff's confinement as follows:

k.    On or about August 31, 2020, CenterPointe Hospital Defendants continued to detain and restrain Plaintiff in their facility past the erroneous 96-hour hold for an additional nine days (approximate) without lawful or medical reason to do so, and did so knowingly that there is no medical or legal basis to restrain Plaintiff;

l.    On or about December 4, 2020, the CenterPointe Hospital Defendants again detained and restrained Plaintiff for four (4) days without lawful or medical

reason to do so, and did so knowingly that there is no medical or legal basis to restrain Plaintiff.

177.    Based on information and belief Defendant Dr. Shazia Malik and Defendant Dr. Azfar Malik are the owners of Defendant CenterPointe.

178.    During the August 31, 2020, unlawful detention (false imprisonment) Defendant Dr. Shazia Malik was acting as Plaintiff's doctor and would not release Plaintiff despite repeated requests by Plaintiff to be released. Defendant Dr. Shazia Malik knew this imprisonment of Plaintiff to be false, kept the imprisonment going, and held Plaintiff in Defendant CenterPointe for at least nine (9) days without any reasonable or legitimate medical basis to do so.

179.    During the December 4, 2020, unlawful detention (false imprisonment) Defendant Dr. Azfar Malik was acting as Plaintiff's doctor and was not releasing Plaintiff despite repeated requests by Plaintiff to be released. Defendant Dr. Azfar Malik knew this imprisonment of Plaintiff to be false, kept the imprisonment going, and held Plaintiff in Defendant CenterPointe for at least four (4) days without any reasonable or legitimate medical basis to do so.

180.    Based on information and belief, Defendant Dr. Azfar Malik and Defendant Dr. Shazia Malik were at all times agents of Defendant CenterPointe.

181.    CenterPointe Hospital Defendants had no legal right to do so because Plaintiff did not consent.

### Count III – FALSE IMPRISONMENT UNDER COMMON LAW (NEGLIGENT)

182.     Plaintiff incorporates by reference all above paragraphs and repleads them herein.

183.    Missouri recognizes negligent false imprisonment. *Blue v. Harrash's North Kansas City, LLC*, 170 S.W.3d 466, 475 (Mo. App. W.D. 2005).

184.    Plaintiff incorporates by reference the above briefing on intentional false imprisonment claims under common law and repleads them as if fully set out herein.

185.    Defendant Dr. Shazia Malik and Defendant Dr. Azfar Malik, individually, and Defendant CenterPointe (by and through Defendant Dr. Shazia Malik and Defendant Dr. Azfar Malik), would have owed Plaintiff a duty because it undertaking the conduct of being a reasonably prudent mental hospital, conduct creating a risk of harm, and conduct of being in a position of great trust and power over other persons, which is also conduct that creates a risk of harm when undertaken and therefore should not be done in a negligent manner.

186.    Defendant Dr. Shazia Malik and Defendant Dr. Azfar Malik, individually, and Defendant CenterPointe (by and through Defendant Dr. Shazia Malik and Defendant Dr. Azfar Malik) breached its duty when it unlawfully took control and restraint and imprisonment of Plaintiff without the legal right to do so, without any reasonable prudence under the accepted standards of reasonably prudent hospitals similarly situated, and without having done so in the ordinary course of standards.

187.    The CenterPointe Hospital Defendants' breach caused Plaintiff's damages.

188.    Plaintiff was damaged with general and special damages outlined herein.

**COUNT IV– FALSE IMPRISONMENT UNDER COMMON LAW (INTENTIONAL)**

189.    Plaintiff incorporates by reference all above paragraphs and repleads them herein.

190.    Defendant Brock, John Doe 2, John Doe 3, Defendant Dr. Klevene, individually, Defendant Dr. Sprowls, individually, and Defendant SSM Health (by and through

Defendant Dr. Klevene and Defendant Dr. Sprowls) (hereinafter referred to collectively as "SSM Hospital Defendants") without consent and without legal right or authority to do so, intentionally restrained and intentionally caused to be restrained Plaintiff's person with the intent to cause Plaintiff's confinement as follows:

m.  On December 4, 2021, JANE DOE went to SSM Health following a sexual assault by John Doe 1.

n.  JANE DOE was taken to an exam room, her clothes were removed, and she waited for several hours.

o.  After waiting for several hours, Defendant Brock, along with at least two (2) other STLCPD Officers arrived at the hospital. JANE DOE requested that Defendant Brock and the other two (2) STLCPD Officers not be allowed to talk to her because of her prior encounters with Defendant Brock.

p.  Nonetheless, these officers discussed the case with JANE DOE's treating physician, Defendant Dr. Klevene.

q.  After meeting with these officers, Defendant Dr. Klevene began to insinuate that the injuries JANE DOE sustained from John Doe 1 were not legitimate, that she was exhibiting drug seeking behavior, and that her wounds were self-inflicted because the wounds were not as "severe" as they should be.

r.  Defendant Dr. Klevene, based upon the interactions with STLCPD Officers recommended to Defendant Dr. Sprowls that JANE DOE be placed under a 96-hour psychiatric hold.

s.  Defendant Dr. Sprowls then placed JANE DOE on a psychiatric hold, and she was transferred to another hospital.

t.  Upon meeting with a psychiatrist the following morning JANE DOE was immediately released because her risk of self-harm or suicidal ideations was "low".

u.  Upon JANE DOE's request, she was not provided with any documentation concerning the documentation that must be provided by a healthcare facility should someone be placed under a 96-hour psychiatric hold in the State of Missouri.

191.  During the December 4, 2021, unlawful detention (false imprisonment) Defendant Dr. Klevene and Defendant Dr. Sprowls was acting as Plaintiff's doctors and was not releasing Plaintiff despite repeated requests by Plaintiff to be released. Defendant Dr. Klevene and Defendant Dr. Sprowls knew this imprisonment of Plaintiff to be false, kept the imprisonment going, and held Plaintiff in Defendant SSM Health facility for at approximately forty-eight (48) hours without any reasonable or legitimate medical basis to do so.

192.  Based on information and belief, Defendant Dr. Klevene and Defendant Dr. Sprowls were at all times agents of Defendant SSM Health.

193.  Defendants Brock, John Doe 2, John Doe 3, and SSM Health Defendants had no legal right to do so because Plaintiff did not consent.

### Count V – False Imprisonment Under Common Law (Negligent)

194.  Plaintiff incorporates by reference all above paragraphs and repleads them herein.

195.  Missouri recognizes negligent false imprisonment. *Blue v. Harrash's North Kansas City, LLC*, 170 S.W.3d 466, 475 (Mo. App. W.D. 2005).

196.     Plaintiff incorporates by reference the above briefing on intentional false imprisonment claims under common law and repleads them as if fully set out herein.

197.     Defendant Dr. Klevene and Defendant Dr. Sprowls, individually, and Defendant SSM Health (by and through Defendant Dr. Klevene and Defendant Dr. Sprowls), would have owed Plaintiff a duty because it undertook the conduct of being a reasonably prudent mental hospital, conduct creating a risk of harm, and conduct of being in a position of great trust and power over other persons, which is also conduct that creates a risk of harm when undertaken and therefore should not be done in a negligent manner.

198.     Defendant Dr. Klevene and Defendant Dr. Sprowls, individually, and Defendant SSM Health (by and through Defendant Dr. Klevene and Defendant Dr. Sprowls) breached its duty when it unlawfully took control and restraint and imprisonment of JANE DOE without the legal right to do so, without any reasonable prudence under the accepted standards of reasonably prudent hospitals similarly situated, and without having done so in the ordinary course of standards.

199.     The SSM Health Defendants' breach caused JANE DOE's damages.

200.     JANE DOE was damaged with general and special damages outlined herein.

**COUNT VI - NEGLIGENT HIRING AND/OR SUPERVISION**

201.      Plaintiff incorporates by reference all above paragraphs and repleads them herein.

202.     Defendants St. Louis County Police Department and Defendant St. Louis County had a duty to properly and reasonably select, employ, train and monitor their employees, servants, agents, ostensible agents and/or their staff of physicians and technicians to ensure they were competent to provide adequate medical care and abide by the laws of the State of Missouri related to their positions.

203.     Defendants knew or should have known of JANE DOE's consistent requests and

affirmations that she was not suicidal and not in need of any help. They breached the

foregoing duties by failing to properly and/or reasonably select, employ, train and

supervise their employees, Defendants were competent to provide adequate care in a non-

negligent fashion and know the proper procedures when refusing to allow a voluntary

patients request to leave the facility.

204.     It was reasonably foreseeable that such negligent selection, employment, training

and supervision of Defendants, was likely to result in injury to JANE DOE

205.     As a direct and proximate result of that breach, JANE DOE has suffered damages

for which the Defendants, are jointly and severally liable.

## <u>COUNT VII – ABUSE OF PROCESS</u>

206.      JANE DOE incorporates by reference all the allegations contained in her Factual

Allegations to All Counts and all prior Counts, as if fully set out herein.

207.     Defendant Koester on three (3) occasions obtained warrants to commit JANE

DOE to psychiatric facilities for 96-hour evaluations.

208.     Defendant Koester signed or provided an affidavit for these commitments on

February 3, 2017, September 1, 2020 and then on December 4, 2020.

209.     Defendant Koester made an illegal, improper or perverted abuse of process

because of the following;

     v.   For the February 3, 2017 process, it was based upon unsigned letters that were

        received by STLCPD and was based upon three unsigned, letters where it was

        ultimately determined there were no fingerprints on these letters, which JANE

        DOE vehemently denied were written by her. Any reasonable person would have

investigated these letters prior to causing JANE DOE's arrest and further incarceration.

w. Defendant Koester personally removed JANE DOE from her home, placed her in his patrol vehicle and drove JANE DOE to Defendant CenterPointe in St. Charles, County Missouri, which is outside of St. Louis County Missouri in September of 2020. Further, Defendant Koester in his affidavit made statements that were patently false, including that JANE DOE had suicidal thoughts, tendencies, she had made previous threats of suicide, and that she had access to firearms.

x. On December 4, 2020, Defendant Koester again filed affidavits in support of a 96-hour mental hold against JANE DOE, Defendant Koester, based upon the previous four (4) years of interactions with JANE DOE knew, or should have known that this hold was improper and that JANE DOE was not having suicidal ideations or concerns of self-harm. Further, after four (4) years of complaints, evaluations, and four (4) years of psychiatrists stating that JANE DOE had no mental health concerns of the nature that Defendant Koester complained of, again, Defendant Koester's complaints were unfounded.

210.     There is presently no excuse for Defendant Koester to have made these allegations and affidavits, except that it appears Defendant Koester is the only person besides a few officers of STLCPD that share this opinion. No mental health professional, outside of the CIT unit that Defendant Koester works in has ever substantiated Defendant Koester's allegations.

211.     As a direct and proximate result of that breach, JANE DOE has suffered damages for which the Defendants are jointly and severally liable.

## COUNT VIII – ASSAULT

212.     JANE DOE incorporates by reference all the allegations contained in her Factual Allegations to All Counts and all prior Counts, as if fully set out herein.

213.     On December 4, 2020, JANE DOE was removed from her home by Defendant Dees.

214.     Defendant Dees, pulled JANE DOE's arm in an unreasonably forceful manner in an attempt to restrain JANE DOE, and by doing so, he caused her labrum to be torn.

215.     JANE DOE was taken against her will and confined to Defendant CenterPointe by Defendant Dees.

216.     Defendant Dees failed to get her medical treatment for her injury.

217.     Defendant Dees' restraint was unwarranted and unjustified.

218.     As a result of his injury, JANE DOE had to have shoulder surgery because of Defendant Dees' actions.

219.     As a direct and proximate result of Defendant Dees' assault, JANE DOE has suffered damages for which the Defendants are jointly and severally liable.

## COUNT IX – ASSAULT

220.      JANE DOE incorporates by reference all the allegations contained in her Factual Allegations to All Counts and all prior Counts, as if fully set out herein.

221.     Defendant John Doe 1 has repeatedly attacked, and ultimately raped JANE DOE

222.     John Doe 1's attacks were unwarranted and unjustified.

223.     In a text message dated January 21, 2022, John Doe 1 admits to both attacking JANE DOE in 2022, 2021, 2017 and 2016.

224.     John Doe 1 has inflicted severe injuries to JANE DOE that resulted in her having multiple surgeries and having other emotional trauma because of his actions.

225.     JANE DOE has complained to St. Louis County and STLCPD of these assaults, to which both have refused to investigate these acts committed by John Doe1.

226.     As a direct and proximate result of these assaults, JANE DOE has suffered damages.

## COUNT X – VIOLATIONS OF THE 4TH AMMENDMENT – ILLEGAL SEARCH AND SEIZURE

227.     JANE DOE incorporates by reference all the allegations contained in her Factual Allegations to All Counts and all prior Counts, as if fully set out herein.

228.     STLCPD Officers entered JANE DOE\s home and searched Her Home on August 31, 2020 and December 4, 2020.

229.     STLCPD removed JANE DOE from Her Home.

230.     STLCPD removed JANE DOE's personal property from Her Home, including calendars, journals and other personal property of JANE DOE

231.     JANE DOE has been deprived of her personal property.

232.     As a direct and proximate result of that breach, JANE DOE has suffered damages for which the Defendants are jointly and severally liable.

## COUNT XI – VIOLATIONS OF THE 4TH AMMENDMENT – ILLEGAL SEARCH AND SEIZURE

233.     JANE DOE incorporates by reference all the allegations contained in her Factual Allegations to All Counts and all prior Counts, as if fully set out herein.

234.     JANE DOE was involuntarily committed while at Defendant SSM Health, and while at the hospital she had a voice recorder in her possession.

235.     While at the hospital, this voice recorder was stolen from her.

236.     As a direct and proximate result of that breach, JANE DOE has suffered damages for which the Defendants are jointly and severally liable.

## JURY DEMAND

1.  Plaintiff demands a trial by jury on all issues, claims, counts, and causes of action that may by law be submitted to such said jury.

## PRAYER FOR RELIEF

WHEREFORE, Premises Considered, Plaintiff demands that services of citation be prepared, the parties served, and after trial by jury on the merits, requests as follows:

i.   Judgment on all counts rendered in favor of Plaintiff(s) for monetary damages within the jurisdictional limits of this Court;

ii.  Past, present, and future damages for mental anguish, pain & suffering, , and special damages;

iii. Reasonable attorney's fees, costs of court, and costs of litigation;

iv.  Exemplary and/or punitive damages to the maximum extent permitted by law; and

v.   All other relief in law or in equity that Plaintiff(s) is/are entitled to.


Respectfully submitted,

HOWARD HAAKE, LLC

By:     _____
Derek R. Haake, #64301

511 West Pearce Blvd.
Wentzville, Missouri 63385
(636) 332-5555
derek@howardhaake.com

*Attorney for Plaintiff*